IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MICHELE RADER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 24-CV-445-JFJ |
| | ) | |
| OX CAR CARE INC., a foreign corporation, | ) | |
| | ) | |
| Defendant. | ) | |

# OPINION AND ORDER

Before the Court is the Motion to Compel Arbitration and Dismiss (ECF Nos. 15, 16), filed by Defendant Ox Car Care Inc. ("Defendant"), against Plaintiff Michele Rader ("Plaintiff").[1] The parties have consented to a magistrate judge presiding over the case. ECF No. 18.

For the reasons set forth below, Defendant's motion is GRANTED IN PART and DENIED IN PART. The Court concludes that Plaintiff's claims must be compelled to arbitration. In its discretion, the Court elects to stay the case pending resolution of the arbitration proceeding. The Court denies the motion in all other respects, without prejudice to re-urging upon lifting of the stay.

**I.   Background**

On March 9, 2024, Plaintiff purchased a Platinum Vehicle Service Agreement ("VSA") from Defendant for Plaintiff's 2016 Dodge Ram 2500 ("Covered Vehicle"). *See* ECF No. 15-1 (VSA). Defendant is the administrator and obligor of the VSA. *Id.* at Ex. 0007.

The VSA provides that Plaintiff will pay $4,131.00 in exchange for repair or replacement coverage of certain vehicle parts and applicable labor. *Id.* at Ex. 0002 (Declaration Page); *id.* at

---

[1] The Court docketed Defendant's motion as two separate motions.

Ex. 0008-0009 (listing covered vehicle parts).² The VSA is for a term of sixty months or 100,000 miles. *Id.* at Ex. 0002. Under the "Elimination Period" provision, failures that occur within the first thirty days or 1,000 miles are considered pre-existing conditions and are not covered. *Id.* at Ex. 0008.

> The VSA contains the following provision governing arbitration and choice of law:
>
> The Parties agree that any and all claims, disputes and controversies related in any way to this Agreement, including but not limited to claims related to the underlying transaction giving rise to this Agreement, or claims related to the sale, financing or fulfillment of this Agreement (collectively, "Claims"), shall be resolved by final and binding arbitration. "Claims" shall be given the broadest meaning possible and includes, without limitation, Claims arising under Agreement, tort, statute, regulation, rule, ordinance or other rule of law or equity . . . . THE PARTIES, INCLUDING YOU, WAIVE ANY RIGHT TO HAVE CLAIMS DECIDED BY A JUDGE OR JURY.
>
> The Parties agree and acknowledge that the transaction evidenced by this Agreement affects interstate commerce. The parties further agree that all issues relating to this Arbitration Agreement . . . , including its enforcement, scope, validity, interpretation, and implementation, will be determined pursuant to federal substantive law and the substantive and procedural provisions of the Federal Arbitration Act . . . . If federal substantive law holds that state law should apply to any issue relating to this Arbitration Agreement . . . , then the law of the state where You purchased the Agreement shall apply, without regards to conflicts of law.

*Id.* at Ex. 0011 (emphasis omitted). The VSA also includes "Special State Requirements" that "supersede any . . . provision . . . to the contrary." *Id.* at Ex. 0014. The applicable requirements for Oklahoma provide that, "[w]hile arbitration is mandatory, the outcome of any arbitration shall be non-binding on the parties, and either party shall, following arbitration, have the right to reject the arbitration award and bring suit in a district court of Oklahoma. **This is not an insurance contract**." *Id.* (emphasis in original).

---

² Plaintiff agreed to pay the VSA's purchase price in twenty-four monthly installments of $169.00 under a "Payment Plan Agreement" with SING for Service, LLC ("SING"). *Id.* at Ex. 0003-0006 (Payment Plan Agreement). The Payment Plan Agreement contains choice of law and arbitration provisions that apply solely to the contractual relationship between Plaintiff and SING. *See id.* at Ex. 0006. SING is not a party to this suit, and these provisions are immaterial to Defendant's motion to compel arbitration.

2

On September 23, 2024, Plaintiff filed suit against Defendant, alleging breach of contract and breach of the implied duty of good faith and fair dealing. ECF No. 2 ¶¶ 22-33. Plaintiff alleges that, in April 2024, she heard a "ticking noise" coming from the Covered Vehicle's engine. *Id.* ¶ 10. After an inspection, Plaintiff discovered the engine lifters required replacement, and she submitted a claim under the VSA. *Id.* ¶¶ 11-12, 15. Plaintiff claims Defendant unreasonably denied her claim. *Id.* ¶ 16.

On November 7, 2024, Defendant filed the instant motion seeking to compel arbitration and dismiss the case for improper venue, such that any proceedings following arbitration would proceed in Oklahoma state court. Alternatively, if the Court reaches the merits, Defendant contends the problem with the engine lifters was a pre-existing condition not covered by the VSA.

## II. Motion to Compel Arbitration

Defendant argues that Plaintiff's claims are subject to arbitration under the VSA's mandatory arbitration provision. Plaintiff contends the arbitration provision is unenforceable because Oklahoma law "reverse preempts" federal law in this case. The Court held oral argument on June 10, 2025, and the motion to compel arbitration is ripe for determination.

For reasons explained below, the Court concludes that the parties entered into a valid, enforceable arbitration agreement and grants Defendant's motion to compel arbitration.

### A.  FAA Applies to Motion

Defendants seek to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1-16, and the Oklahoma Uniform Arbitration Act ("OUAA"), Okla. Stat. tit. 12, §§ 1851-1881. The FAA "applies to all arbitration agreements involving commerce, and creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Comanche Indian Tribe of Okla. v. 49, L.L.C.*, 391 F.3d 1129, 1131 (10th Cir. 2004) (citation modified). This includes federal diversity cases. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S.

3

265, 271 (1995) (noting Congress intended the FAA to apply in diversity cases). The phrase "involving commerce" is "broadly construed so as to be coextensive with congressional power to regulate under the Commerce Clause." *Comanche Indian Tribe*, 391 F.3d at 1132 (quotation omitted). The requirement "reaches not only the actual physical interstate shipment of goods but also contracts relating to interstate commerce." *Id.* (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 n.7 (1967)).

The VSA states that the transaction underlying the agreement "affects interstate commerce" and that "all issues relating to . . . [a]rbitration . . . will be determined pursuant to . . . the substantive and procedural provisions" of the FAA. ECF No. 15-1 at Ex. 0011. The Court finds the VSA is a contract relating to interstate commerce and that the FAA governs the motion to compel arbitration.

**B.    Legal Standards Governing Motions to Compel Arbitration Under FAA**

Under the FAA, a written arbitration provision is deemed "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party "aggrieved" by the "failure, neglect, or refusal of another to arbitrate" may seek relief from a federal district court. *Id.* § 4. The federal court "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*

A district court employs a two-step process in determining whether to enforce an arbitration agreement pursuant to 9 U.S.C. § 4. *Cavlovic v. J.C. Penney Corp.*, 884 F.3d 1051, 1057 (10th Cir. 2018). First, it determines whether a valid arbitration agreement exists that provides the movant the right to compel arbitration. *Id. See also Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*, 59 F.4th 1090, 1097 (10th Cir. 2023) (explaining that "arbitration clauses are only valid

4

if the parties intended to arbitrate," and that this step looks only to "whether the parties agreed to arbitrate [their] dispute") (quotations omitted). Second, it determines whether the dispute falls within the scope of the agreement. *Cavlovic*, 884 F.3d at 1057. Before reaching the second step, a court sometimes must decide the "gateway question" of whether the agreement delegates arbitrability issues – including the enforceability, scope, applicability, or interpretation of the agreement – to the arbitrator. *Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 832-33 (10th Cir. 2023) (referring to such provisions as "delegation clauses"). Even when the agreement contains a delegation clause, a court must always decide whether the parties agreed to arbitrate in the first instance. *Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1105-06 (10th Cir. 2020) ("[W]hile issues such as the scope and enforceability of an arbitration clause can be committed to an arbitrator through a delegation provision, courts must always resolve whether the clause was agreed to by the parties.") (citation modified).

Courts generally treat motions to compel arbitration akin to motions for summary judgment. *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 612 (10th Cir. 2014). The movant "bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement; if it does so, the burden shifts to the [nonmovant] to raise a genuine dispute of material fact regarding the existence of an agreement." *Id.* The nonmovant is given "the benefit of all reasonable doubts and inferences that may arise." *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012) (quotation omitted). When "a quick look at the case" reveals "no material disputes of fact," a court can "decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration." *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014).

C.  **Parties Agreed to Arbitrate**

In determining whether the parties agreed to arbitrate under the FAA, the Supreme Court has instructed that courts should apply state-law contract formation principles. *First Options of*

5

*Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The VSA provides that, "[i]f federal substantive law holds that state law should apply to any issue relating to this Arbitration Agreement . . . , then the law of the state where [y]ou purchased the Agreement shall apply." ECF No. 15-1 at Ex. 0011. Here, because federal law requires the Court to apply state contract law to determine whether a valid arbitration agreement was formed, and because the VSA was purchased in Oklahoma, the Court applies Oklahoma contract law.

Under Oklahoma law, a valid, legally enforceable contract requires: (1) parties capable of contracting; (2) mutual consent, *i.e.*, a meeting of the minds; (3) a lawful object; and (4) sufficient consideration. Okla. Stat. tit. 15, §§ 2, 51.

Defendant satisfied its burden of showing the formation of a valid arbitration agreement under Oklahoma law. Defendant submitted a copy of the VSA that outlines the parties' relationship and includes an arbitration provision. ECF No. 15-1. The VSA contains Plaintiff's personal information, including her name, street address, phone number, email address, vehicle information, and credit card information. *Id.* at Ex. 0002-0004. Although Plaintiff did not physically sign the VSA, she agreed to its terms via telephone. *See id.* at Ex. 0002 (signature line for "Agreement Holder" with "Telephone Authorization" typed below it); *id.* at Ex. 0004 (signature line for "Purchaser" with "Per Phone" typed above it). This method of acceptance is permissible under Oklahoma law. *See, e.g.*, *Wohlford v. Am. Auto Shield, LLC*, No. CIV-22-520, 2023 WL 1107891, at *5 (W.D. Okla. Jan. 30, 2023) (noting "Oklahoma law does not require . . . formalistic execution of a contract," and rejecting argument that a physical signature is needed to accept a contract) (quotation omitted). *See also Armstrong v. Guy H. James Constr. Co.*, 402 P.2d 275, 277 (Okla. 1965) (noting contract can be accepted by word).

Plaintiff does not contest any facts relating to contract formation, does not assert that she was unaware of the arbitration provision, and does not raise any defense to contract formation, such as fraud, duress, or unconscionability. The only evidence Plaintiff attached to her response

is a copy of the VSA (ECF No. 21-1), which mirrors the copy submitted by Defendant (ECF No. 15-1). Because Plaintiff failed to raise any genuine disputes of material fact, a valid arbitration agreement exists as a matter of law.[3]

### D. Parties Waived Enforcement of the VSA's Delegation Clause

Having determined a valid arbitration agreement exists, the Court next determines whether it or the arbitrator has the power to decide questions of arbitrability. *See Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281 (10th Cir. 2017) ("[T]he question of who should decide arbitrability precedes the question of whether a dispute is arbitrable.") (emphasis omitted). As explained above, because arbitration is a matter of contract, parties can agree to "delegate" certain "gateway" questions to the arbitrator, *Brayman*, 83 F.4th at 832, including whether the arbitration agreement is enforceable and whether the parties' dispute falls within the scope of the agreement, *Fedor*, 976 F.3d at 1105. If there is a delegation clause properly enforced by the parties, the Court cannot decide arbitrability, "even if [it] thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Brayman*, 83 F.4th at 832 (quotation omitted).

The VSA includes the following delegation clause: "[T]he arbitrator shall have exclusive authority to decide all issues related to the enforcement, applicability, scope, validity, and interpretation of this Arbitration Agreement, including . . . any . . . challenge that the Arbitration Agreement is void, voidable, or otherwise invalid." ECF No. 15-1 at Ex. 0011. However, Defendant's briefing does not seek enforcement of, or even reference, this delegation clause. *See* ECF Nos. 15, 26. Plaintiff's response also does not reference or seek enforcement of the delegation clause. *See* ECF No. 21. During oral argument, neither party mentioned the delegation clause. Both parties urged this Court to decide the specific issue presented under Oklahoma law regarding

---

[3] Plaintiff appears to concede that she agreed to arbitrate and argues that such agreement is unenforceable due to the OUAA, as explained below.

enforceability of the arbitration provision. Consistent with other federal district courts, the Court finds the parties waived the right to enforce the delegation clause under these circumstances. *See Kennedy v. Lady Jane's Haircuts for Men Holding Co.*, No. 23cv493, 2024 WL 4290260, at *3 (S.D. Ohio Sept. 25, 2024) (resolving all arbitrability issues where parties did not seek to enforce delegation clause); *Silvernagel v. PathGroup Holdings, LLC*, No. 22-cv-01013, 2023 WL 4748190, at *4 (M.D. Tenn. July 25, 2023) (same); *Bentley v. Van Michael Salon, Inc.*, No. 19-cv-05236, 2020 WL 10056275, at *4 (N.D. Ga. Oct. 29, 2020) (same); *Donald v. Nat'l Truck Funding, LLC*, No. 16cv403, 2017 WL 1088094, at *3 n.2 (S.D. Miss. Mar. 22, 2017) (same). *Cf. Jaramillo v. N. Rests. LLC*, No. 24-2115, 2024 WL 3360498, at *2 (D. Kan. July 10, 2024) (enforcing delegation clause where defendant raised issue); *Ham v. CarMax Auto Superstores, Inc.*, No. 23-cv-01057, 2024 WL 2093655, at *5 (D.N.M. May 9, 2024) (same). The Court therefore will resolve all arbitrability issues, including the enforceability and scope of the arbitration provision.

E. **VSA's Arbitration Provision Is Enforceable**

Plaintiff argues the mandatory arbitration provision is unenforceable because the VSA is a contract that "references insurance" under the OUAA, which "reverse preempts" federal law pursuant to the McCarran-Ferguson Act ("MFA"), 15 U.S.C. §§ 1011-1015. For reasons explained below, the Court rejects this argument and finds the provision enforceable.

1. **OUAA "Reverse Preempts" FAA for Contracts That "Reference Insurance"**

Generally, the FAA preempts state laws that limit the enforcement of arbitration. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011) ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA."). However, a limited exception is found in the MFA. Under the MFA, "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically

8

relates to the business of insurance." 15 U.S.C. § 1012(b). Thus, where applicable, the MFA allows state laws that "regulate the business of insurance" to "reverse preempt" conflicting federal law. *W. Ins. Co. v. A & H Ins., Inc.*, 784 F.3d 725, 727 (10th Cir. 2015).

In determining whether the MFA's reverse preemption provision applies, courts break down § 1012(b) into three elements: (1) whether the federal statute at issue "specifically relates to the business of insurance"; (2) whether the state statute was enacted "for the purpose of regulating the business of insurance"; and (3) whether application of the federal statute would "invalidate, impair, or supersede" the state statute. *Davister Corp. v. United Republic Life Ins. Co.*, 152 F.3d 1277, 1279 n.1 (10th Cir. 1998).

The Court concludes the OUAA functions to reverse preempt any contract that is deemed to "reference insurance" as that term is used in § 1855(D) of the OUAA. First, it is well-settled that the FAA does not "specifically relate to the business of insurance." *Davister Corp.*, 152 F.3d at 1279 n.1. Second, the phrase "regulating the business of insurance" has been broadly defined to include laws that regulate the relationship between insurance companies and their policyholders. *SEC v. Nat'l Sec., Inc.*, 393 U.S. 453, 460 (1969). The OUAA provides that: "The [Oklahoma] Uniform Arbitration Act shall not apply to . . . contracts which reference insurance, except for those contracts between insurance companies." Okla. Stat. tit. 12, § 1855(D). This provision prohibits arbitration agreements between insurers and insureds and therefore "regulates the business of insurance." *See Mut. Reinsurance Bureau v. Great Plains Mut. Ins. Co.*, 969 F.2d 931, 933 (10th Cir. 1992) (finding similar Kansas statute regulated the business of insurance, because it prevented arbitration agreements between insurance companies and their policyholders). *See also Sparks v. Old Republic Home Prot. Co.*, 467 P.3d 680, 691 (Okla. 2020) (finding that § 1855(D) regulates the business of insurance for purposes of the MFA). Third, application of the FAA's preemption provision would preclude enforcement of and supersede § 1855(D) with respect

to any contracts that "reference insurance." Therefore, the OUAA generally functions to "reverse preempt" mandatory arbitration provisions in contracts that "reference insurance," such that the parties cannot be forced to arbitrate.[4]

### 2. VSA Does Not "Reference Insurance" and Reverse Preemption Does Not Apply

Deciding whether the VSA "references insurance" for purposes of § 1855(D) of the OUAA requires application of state law. As a federal court sitting in diversity, the Court must predict how the Oklahoma Supreme Court would resolve the question. *See Flores v. Monumental Life Ins. Co.*, 620 F.3d 1248, 1250 (10th Cir. 2010) ("As a federal court sitting in diversity, our task is simply to ascertain and apply Oklahoma law, attempting to predict what the state's highest court would do if faced with the specific issues before us . . . .") (citations and internal quotation marks omitted).

Before explaining such prediction, the Court offers a summary of Oklahoma law. In *McMullan v. Enterprise Financial Group, Inc.*, 247 P.3d 1173 (Okla. 2011), the Oklahoma Supreme Court held as a matter of first impression that a vehicle service contract met the general definition of insurance and could therefore give rise to a tort claim for breach of the duty of good faith and fair dealing applicable to insurance contracts. 247 P.3d at 1180. The court reasoned that, like a typical insurance contract, the vehicle service contract was designed "to protect the purchaser from the expenses associated with an unexpected mechanical breakdown," and "[t]he purchaser pays a premium . . . to shift any potential hazard they may face to the vehicle service provider."

---

[4] Defendant does not argue that the VSA's federal choice of law provision precludes application of the OUAA. Under Oklahoma's choice of law rules, a contractual choice of law provision is unenforceable if it conflicts with public policy. *SFF-TIR, LLC v. Stephenson*, 250 F. Supp. 3d 856, 972-73 (N.D. Okla. 2017). If the VSA is found to reference insurance, thereby triggering reverse preemption, its provision electing application of federal substantive law and the FAA may be unenforceable. *See Sparks*, 467 P.3d at 687 ("[F]or more than half a century, this Court has held that an insurance company's insertion of forced arbitration in an insurance contract deprived the insured of a judicial examination and determination of the issues and such policy provision was contrary to public policy and unenforceable."). Because the Court finds the VSA does not reference insurance, the Court need not reach this question.

10

*Id.* at 1178. Because the vehicle service contract "function[ed] and perform[ed] as insurance," the court concluded that such contract "should be treated like any other insurance contract if it is breached." *Id.* at 1180.

The Oklahoma Legislature responded. In 2012, the Oklahoma Legislature passed the Oklahoma Service Warranty Act ("OSWA"), Okla. Stat. tit. 15, §§ 141.1-141.35. The OSWA declares that "service warranties are not insurance in this state or otherwise regulated under the Insurance Code," *id.* § 141.2(17)(f), and that service warranties "shall not be deemed to create a special relationship between the parties which would give rise to an action in tort to recover for breach of the duty of good faith and fair dealing," *id.* § 141.24(B). Assuming this statute can survive constitutional challenges not properly raised here,[5] contracts falling under the OSWA are deemed "not insurance" under state law and cannot give rise to a bad-faith tort claim.

Eight years later, in *Sparks v. Old Republic Home Protection*, 467 P.3d 680 (Okla. 2020), the Oklahoma Supreme Court analyzed whether a home warranty plan "referenced insurance" for purposes of the OUAA. Relying in part on the reasoning in *McMullan*, the court held that a home warranty plan "referenced insurance" under § 1855(D) of the OUAA. 467 P.3d at 688-91. The

---

[5] In her response brief, Plaintiff discussed that one Oklahoma district court found § 141.24(B) of the OSWA to be an unconstitutional special law in violation of Article V, § 46 of the Oklahoma Constitution. *See* ECF No. 21 at 5 (citing *Naquin v. America's Car Mart Inc.*, No. CJ-2022-3770, 2024 WL 1049834 (Okla. Dist. Ct. Mar. 5, 2024)). At oral argument, Plaintiff noted that *Naquin* is currently on appeal to the Oklahoma Supreme Court and argued her reference to *Naquin* amounted to a constitutional challenge under Federal Rule of Civil Procedure 5.1. However, Plaintiff did not file the notice required by Rule 5.1, and neither the Court nor Defendant viewed this argument as making a constitutional challenge. The Court finds that the response brief did not raise a constitutional challenge. The Court further finds that Plaintiff's challenge at oral argument was untimely asserted, over six months after the brief was filed. *See* Fed. R. Civ. P. 5.1 ("A party's failure to file and serve the notice . . . does not forfeit a constitutional claim or defense *that is otherwise timely asserted*.") (emphasis added). *See also Mockeridge v. Alcona Cty. by Bd of Comm'rs*, 636 F. Supp. 3d 790, 793-94 (E.D. Mich. 2022) (denying motion to certify where plaintiffs failed to raise constitutional challenge in pleading and failed to comply with procedural requirements of Rule 5.1).

home warranty plan's mandatory arbitration provision was unenforceable because it was "reverse preempted" by the MFA. *Id.* at 691.

Relevant to the *Sparks* decision, Oklahoma has a statutory scheme entitled the Oklahoma Home Service Contract Act ("OHSCA"), Okla. Stat. tit. 36, §§ 6750-6755. Like the OSWA at issue here, the OHSCA states that contracts under its purview "are not insurance in this state or otherwise regulated under the Insurance Code." Okla. Stat. tit. 36, § 6752(9). *See also id.* § 6751(C) ("The types of agreements covered by the [OHSCA] are not insurance and do not have to comply with any other provision of the Insurance Code outside of the [OHSCA].").

Before conducting its analysis, the *Sparks* court outlined its reasoning as follows:

> Next, we examine whether the contract "references insurance" and therefore is exempt from the [OUAA]. [The defendant] urged that the contract could not be treated as insurance because by statute, "home service contracts are not insurance in this state." We disagree with this conclusion *on the basis of several factors*. The contract drafted by [the defendant] is titled a "home warranty" and not a home service contract, and it is unclear whether § 6752 (9) [of the OHSCA] has any application to the instant matter. This will be discussed in more detail. In addition, § 1855 (D) [of the OUAA] is broader than advocated by [the defendant]. *Section 1855 does not state that the Uniform Arbitration Act shall not apply to insurance contracts, rather it exempts contracts which simply reference insurance as defined by this Court's extensive jurisprudence.* Finally, we look more closely at the nature of the home warranty before us and examine its nature in light of guidelines from the Supreme Court of the United States, Oklahoma statutes defining "insurance," and the wisdom of other Courts.

*Id.* at 688 (emphasis added) (citation omitted). The court concluded the home warranty did not "reference insurance" based on the following facts: (1) the plan provider had previously admitted in the litigation that the contract was insurance and that it was an insurance company; (2) the plan provider's parent company listed it as part of its insurance group in its annual review; (3) the plan had an insignia printed on it referencing "Old Republic Insurance Group"; (4) applying the *McMullan* test, the plan was analogous to insurance and met "all the hallmarks" of an insurance

12

policy based on its shifting of risk; and (5) the plan was *not* governed by OHSCA, and the "not insurance" language in § 6752(9) did not apply. *Id.* at 688-91.[6]

Again, the Oklahoma Legislature responded. In 2022, the Oklahoma Legislature amended the OHSCA to expressly include home warranties. *See* Okla. Stat. tit. 36, § 6751(A) ("The purpose of the [OHSCA] is to create an independent legal framework within which home service contracts *and home warranties* are defined, may be sold and are regulated in this state.") (emphasis added). It now provides that "[h]ome service contracts *and home warranties* are not insurance in this state or otherwise regulated under the Insurance Code." *Id.* § 6752(9) (emphasis added). Therefore, *Sparks* is abrogated to the extent it holds that home warranties fall outside the scope of the OHSCA.

Neither *Sparks* nor the legislative amendment answer the precise question presented here: Does the VSA, which falls under the OSWA and is therefore "not insurance" for purposes of Oklahoma law, nonetheless "reference insurance" for purposes of the OUAA? If yes, reverse preemption applies, and Plaintiff cannot be compelled to arbitrate. If no, Defendant can enforce the arbitration provision. As discussed at oral argument, this presents a close question.

The Court predicts the Oklahoma Supreme Court would find the VSA does not "reference insurance" for purposes of the OUAA and would compel arbitration of Plaintiff's claims. First, unlike the home warranty at issue in *Sparks*, which fell outside the OHSCA, the VSA falls squarely within the scope of the OSWA.[7] The OSWA defines a "Service Warranty" as a contract "for a

---

[6] In summarizing the procedural history, the *Sparks* court stated that it "agreed" with the lower court's conclusion that the Oklahoma Legislature "did not intend to exempt contracts" made under the OHSCA and the OSWA from § 1855(D) of the OUAA. 467 P.3d at 685. However, the court did not elaborate on or explain the lower court's reasoning. In the court's own analysis, it considered multiple factors and did not discuss legislative intent. The Court has applied the reasoning outlined in the holding of *Sparks*, as qualified by any subsequent legislative amendments.

[7] The OSWA contains exclusions. Okla. Stat. tit. 15 § 141.2(17)(a)-(e). Plaintiff does not argue that the VSA falls into any of these statutory exclusions.

specific duration to perform the repair or replacement of property or indemnification for repair or replacement for the operational or structural failure due to a defect or failure in materials or workmanship . . . , including, but not limited to, failure due to normal wear and tear . . . ." *Id.* § 141.2(17). The VSA's declaration page titles the agreement as the "Platinum Vehicle Service Agreement." ECF No. 15-1 at Ex. 0002. The VSA covers the costs of "repair or replacement of . . . covered vehicle parts and applicable labor." *Id.* at Ex. 0007. Such coverage includes normal wear and tear. *Id.* at Ex. 0007 ¶ 19 ("Coverage will be extended to all Covered Parts and components that suffered a Breakdown as a result of 'Wear' and/or 'Tear' . . . ."). Based on its terms and purpose, the VSA clearly falls within the scope of the OSWA, which provides that "service warranties are *not insurance* in this state or otherwise regulated under the Insurance Code." Okla. Stat. tit. 15 § 141.2(17)(f) (emphasis added). This is a critical factual distinction from *Sparks*. Although the *Sparks* court stated that "reference insurance" should be given a broader meaning than "insurance contract," 467 P.3d at 688, it also relied extensively on the home warranty plan falling outside the OHSCA in its reasoning. *See Sparks*, 468 P.3d at 691 ("[Defendant] drafted this contract and identified this policy as a 'home warranty' and never refers to this agreement as a 'home service contract.' We find that the [warranty] is not a home service contract as defined by the [OHSCA]."). In the Court's view, such classification was important, if not essential, to the holding. It was not merely a "cherry on top" of the other factors, as argued by Plaintiff during oral argument.

Second, unlike the home warranty at issue in *Sparks*, the VSA expressly disavows being an insurance contract. The VSA's Special State Requirements note in bold underline that the VSA "**is not an insurance contract**." ECF No. 15-1 at Ex. 0014. There are no facts in the record indicating that Defendant's counsel referred to the contract as an insurance contract in pleadings. There is no insignia on the contract itself referencing an insurance company. Here, the contract

itself, and the statute governing it inform the consumer that the VSA is not an insurance contract. Giving "reference insurance" its plain meaning, the VSA does not reference "insurance" where the VSA's subject matter has been declared "not insurance" by its own terms and by state law.

Finally, both times the Oklahoma Supreme Court applied a "functionality" test to declare these types of vehicle service or home warranty contracts to be "insurance," whether for purposes of a bad-faith tort or compelling arbitration, the Oklahoma Legislature responded by amending the statutes. While not controlling as to the precise issue here, these legislative responses consistently distinguish vehicle service and home warranty contracts from traditional insurance agreements, even where they may "function" as insurance under the judicial tests. The Court predicts the Oklahoma Supreme Court would now hold that Plaintiff can be forced to arbitrate under the VSA, based on the factual distinctions between this case and *Sparks* and the legislative responses to *McMullan* and *Sparks*.

The Court acknowledges the VSA functions like insurance under the tests outlined in *McMullan* and *Sparks*, in that it shifts Plaintiff's risks to the vehicle service provider in exchange for payments. This "factor" would therefore weigh in favor of a finding that the VSA references insurance under the *Sparks* analysis. However, in determining whether a contract references "insurance" as a matter of state law, a statutory classification of the contract as "not insurance" is more persuasive to the Court than the outcome of the functionality test. Further, Plaintiff has fair notice that the contract is not providing insurance and that general protections extending to insurance contracts, including arbitration exemptions, do not apply.

In sum, the Court concludes the VSA does not "reference insurance" because: (1) the VSA is declared "not insurance" by its own terms and by function of state law, (2) Defendant did not refer to the VSA as insurance in any pleadings and did not refer to itself as an insurance company to Plaintiff; and (3) although the VSA "functions" as insurance under the *McMullan* and *Sparks*

15

tests, this does not control over other considerations explained in *Sparks*, particularly in light of the legislative amendments following *Sparks*. Therefore, reverse preemption does not apply, and the VSA's arbitration provision is enforceable. *See Boles v. CarShield, LLC*, No. 22-cv-00034-WPJ-MTS, 2023 WL 8851626, at *5 (N.D. Okla. Dec. 21, 2023) (compelling arbitration because vehicle service contract was governed by OSWA, without further explanation or discussion of *Sparks*).[8]

### F. Claims Fall Within Scope of Arbitration Agreement

The Court next determines whether the parties' dispute falls within the scope of the agreement. In doing so, the Court first categorizes the arbitration provision as broad or narrow. *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005). If the Court finds the arbitration provision is narrow, it then determines whether the dispute "is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains an arbitration clause." *Id.* (quotation omitted). Collateral matters are generally beyond the purview of a narrow arbitration clause. *Id.* If the Court finds the arbitration provision is broad, "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Id.* (quotation omitted).

The arbitration provision provides that "any and all claims, disputes and controversies related in any way to this Agreement, including but not limited to claims related to the underlying transaction . . . , or claims related to the . . . fulfillment of this Agreement . . . , shall be resolved by final and binding arbitration." ECF No. 15-1 at Ex. 0011. The term "Claims" is "given the broadest meaning possible and includes, without limitation, Claims arising under . . . tort . . . ." *Id.* This language is consistent with a broad arbitration clause. *See Chi v. Weyerhaeuser Co.*, No.

---

[8] The Court agrees with *Boles'* holding but offers this additional discussion of Oklahoma law.

17-cv-02230, 2018 WL 11431674, at *3 (D. Colo. Aug. 28, 2018) (finding broad arbitration clause where parties agreed to arbitrate "any and all claims, controversies, breaches or disputes . . . arising from or related to this agreement"). *See also Prima Paint Corp.*, 388 U.S. at 398 (same, where parties agreed to arbitrate "[a]ny controversy or claim arising out of or relating to" agreement or breach of agreement); *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) (same, where parties agreed to arbitrate "[a]ny controversy, claim, or breach arising out of or relating to" agreement). Accordingly, a presumption of arbitrability is applied to Plaintiff's claims.

Plaintiff does not offer any argument to rebut this presumption. Plaintiff is asserting claims for breach of contract and breach of the implied duty of good faith and fair dealing. ECF No. 2 ¶¶ 22-33. Plaintiff generally alleges Defendant breached the VSA and acted in bad faith by refusing to repair the Covered Vehicle as required under the VSA; intentionally and recklessly misapplying provisions of the VSA to avoid repair; and failing to properly evaluate and investigate Plaintiff's claim under the VSA. *Id.* ¶¶ 28-29. Plaintiff's claims clearly relate to the VSA and fall within the scope of the broad arbitration provision.

### III.  Motion to Dismiss for Improper Venue

Defendant argues the Court should dismiss this case, rather than institute a stay, based on a forum-selection clause that provides, "[w]hile arbitration is mandatory, the outcome of any arbitration shall be non-binding on the parties, and either party shall, following arbitration, have the right to reject the arbitration award and bring suit in a district court of Oklahoma." ECF No. 15-1 at Ex. 0014.

The FAA instructs that, upon finding the matter arbitrable, the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. *See also Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024) ("When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending

17

arbitration, the court does not have discretion to dismiss the suit on the basis that all claims are subject to arbitration."). However, the FAA does not bar dismissal if "there is a separate reason to dismiss, unrelated to the fact that an issue in the case is subject to arbitration." *Id.* at 476 n.2.

Here, Defendants raise a separate ground for dismissal other than arbitrability – namely, improper venue due to a forum-selection clause. However, the parties contest whether the forum selection provision is mandatory or permissive. Rather than resolve these issues now, the Court elects to stay the proceedings and reach these issues only if necessary at a later time.[9] Defendant may re-urge this ground for dismissal upon remand from the arbitration proceedings.[10]

## IV.   Conclusion

Defendant's Motion to Compel Arbitration (ECF Nos. 15) is GRANTED. The Motion to Dismiss (ECF No. 16) is DENIED.

Pursuant to LCvR 41-1, the Court Clerk is directed to administratively close the case pending either an Order of the Court reopening the proceedings, or dismissal of the action with prejudice by stipulation of the parties.

**SO ORDERED** this 10th day of July, 2025.

*/s/ Jodi F. Jayne*
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**

---

[9] Plaintiff has requested that the Court allow her to file an application to stay proceedings pending completion of arbitration should the Court rule against her. ECF No. 21 at 13.

[10] Defendant also moves to dismiss Plaintiff's claims and claimed damages pursuant to Federal Rule of Civil Procedure 12(b)(6), in the event the Court declines to compel arbitration and declines to dismiss for venue. The Court need not reach these alternative arguments at this time. The Rule 12(b)(6) motion is denied without prejudice to re-urging upon remand from the arbitration proceedings.