**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **MICHELE RADER,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**OX CAR CARE INC.,**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 24-cv-00445-JFJ** |

**<u>OPINION AND ORDER</u>**

Before the Court is Plaintiff's Motion for Leave to Amend to Conform (ECF No. 41). In the motion, Plaintiff requests that the Court permit amendment of the Complaint to add a fraud claim, in conformance with evidence presented at a damages hearing held August 20, 2026. Also before the Court is the amount of damages to be awarded to Plaintiff following entry of default judgment against Defendant. For reasons explained below, the Court denies the motion to amend and awards Plaintiff damages on her breach of contract claim in the total amount of $4,424.26.

**I. Procedural History**

On September 23, 2024, Plaintiff Michele Radar filed her Complaint and Jury Demand, asserting claims against Defendant Ox Car Care Inc. ("Defendant" or "Ox Care") for breach of contract and breach of the duty of good faith and fair dealing applicable to insurance contracts ("bad faith"). ECF No. 2. On October 3, 2024, Plaintiff served the Complaint and Summons on Defendant's registered agent. ECF No. 7. Defendant's counsel entered their appearance on October 23, 2024. ECF No. 8.[1] Defendant filed a motion to compel arbitration on November 7,

[1] The Court granted Defendant's motion to admit co-counsel pro hac vice on November 6, 2024, and directed co-counsel to file an entry of appearance. ECF No. 14. However, co-counsel never entered his appearance in the case.

2024. ECF No. 15. On July 10, 2025, the Court granted Defendant's motion to compel arbitration and stayed the case. ECF No. 31. On April 2, 2026, Defendant's counsel filed a motion to withdraw and informed the Court that his co-counsel had passed away. ECF No. 34.

The Court held a status conference on April 22, 2026. Defendant's counsel informed the Court that, despite successfully compelling arbitration, Defendant had (1) failed to pursue arbitration remedies, (2) ceased all communications with counsel, and (3) upon counsel's information and belief, no longer desired to defend the case. ECF No. 36. The Court granted the motion to withdraw conditioned on Defendant obtaining new counsel. *Id.* The Court stated: "If Defendant fails to cause counsel to enter an appearance within 20 days, Defendant may be subject to adverse litigation consequences up to and including default judgment on all claims originally compelled to arbitration by this Court." *Id.* The Court also lifted the stay. *Id.*

On May 20, 2026, after Defendant failed to cause new counsel to enter an appearance on its behalf, the Court entered an order: (1) allowing Defendant's counsel to withdraw; (2) stating that Defendant was subject to default or sanctions for failing to obey Court orders; (3) stating that Defendant waived its right to arbitrate the dispute; (4) reopening the case; and (5) permitting Plaintiff to seek any desired relief, such as sanctions, no later than June 22, 2026. ECF No 37.

By the required deadline, Plaintiff sought the sanction of default judgment against Defendant pursuant to Federal Rule of Civil Procedure 16(f)(1)(C) and requested a damages hearing.[2] On July 27, 2026, the Court entered an Opinion and Order sanctioning Defendant for failure to obey court orders in the form of a default judgment and set a hearing on damages. On August 20, 2026, the Court conducted an evidentiary hearing, heard the sworn testimony of Michele and Gary Rader, and admitted Plaintiff's Exhibits 1-6 into evidence. Such exhibits

---

[2] Plaintiff did not request attorneys' fees or any other sanctions pursuant to Rule 16(f)(1)(C).

included: (1) Ox Care Platinum Vehicle Services Agreement ("VSA"); (2) email from Defendant to Plaintiff denying her claim ("Denial Letter"); (3) report on Plaintiff's vehicle completed by OneGuard Inspections ("Inspection Report"); (4) invoice from Erin's Performance & Auto Repair ("Repair Bill"), totaling $3,842.26; (5) estimates from Tate Boys Tire & Service; and (6) website printouts from Budget Rent-a-Car showing rental price per day for a full-size pick-up truck. Defendant failed to appear at the damages hearing.

During the hearing, Plaintiff urged the Court to award both contract damages and tort damages for bad faith. The Court expressed skepticism as to the legal viability of the bad faith claim, notwithstanding default, based on Oklahoma statutory law and the Court's prior reasoning on the motion to compel arbitration. The Court gave Plaintiff time to file a supplemental brief providing additional authority supporting the bad faith claim. In her supplemental brief, Plaintiff failed to provide additional authority or further pursue her bad faith claim. Instead, Plaintiff sought to amend her complaint to add a fraud claim in conformance with evidence presented at the damages hearing, pursuant to Federal Rule of Civil Procedure 15(b). Specifically, Plaintiff urged:

> As the evidence at the damages hearing established, all the elements of fraud are met here. First, Defendant made material representations to Plaintiff to induce her to enter into the warranty, including a promise of financial peace of mind. Second, the evidence demonstrated that Defendant knew it to be false and would refuse to pay even if instructed by its inspector. Third, the representations were made to get Plaintiff's premiums and obtain reliance. Fourth, Plaintiff relied on these misrepresentations and as a result suffered actual damages in the form of lost premiums, repair amounts, loss of use, and severe financial hardship.

ECF No. 41 at 4 (footnote omitted). Defendant failed to respond to the motion to amend.

## II. Factual Findings

The following facts are undisputed and established by confessed facts in the Complaint and/or testimony at the damages hearing. By telephone, Plaintiff entered into a Vehicle Services Agreement ("VSA") with Defendant on March 9, 2024, for the total purchase price of $4,131.00.

Plaintiff paid $75.00 down and would make monthly payments in the amount of $169.00 until the purchase price was paid. The VSA covers a 2016 Dodge Ram, which had 156,014 miles on the odometer at the time of purchase. The salesperson told Plaintiff on the phone that the VSA provided bumper-to-bumper coverage.

The VSA was sent to Plaintiff following the purchase. The VSA covers the "above-described vehicle and the repair or replacement of the covered vehicle parts and applicable labor . . . . A "BREAKDOWN" of a Covered Part is defined as FAILURE of such part to meet Manufacturer's Specifications." Hr'g Ex. 1 at 2. Defendant agrees to "pay an authorized repair facility directly to remedy any FAILURE/BREAKDOWN related to repair or replacement of such parts provided that the Agreement Holder does not have insurance or manufacturer's warranty covering such repair or replacement." *Id.* "Covered Parts" is defined as the parts listed in the Schedule of Coverages section of the VSA. *Id.* "Lifters" are expressly included in the "Gasoline/Diesel Engine" section of the schedule of covered parts. *Id.* at 3. Although not discussed at the hearing, the VSA contains limitations of liability and damages as follows:

> The maximum liability of aggregate per any claim is $7,500.00 or Actual Cash Value of the vehicle, whichever is less. However, the total of all benefits paid or payable under this Service Agreement and limits of liability thereunder shall not exceed the actual cash value of the vehicle. Replacement of parts and in particular certain automotive Units, such as engines, transmissions, differential assemblies, and other components, may be by the use of other than new parts. Any such parts will be covered under the terms and conditions for the remaining term and/or mileage of this Agreement as shown on the reverse hereof.
>
> *LIMITATION OF LIABILITY: THIS AGREEMENT SETS OUT THE FULL EXTENT OF OUR RESPONSIBILITIES. NEITHER THE OBLIGOR NOR THE PROGRAM ADMINISTRATOR SHALL BE LIABLE FOR SPECIAL, INDIRECT, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES (INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION, EXPENSES ARISING OUT OF THIRD PARTY CLAIMS, LOSS OF USE OF THE VEHICLE, INCONVENIENCE, OR ANY OTHER LOSS), WHETHER OR NOT CAUSED BY OR RESULTING FROM BREACH OF AGREEMENT, NEGLIGENCE, OR OTHER WRONGFUL ACT OR*

> *OMISSION, EVEN IF IT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. NEITHER THE OBLIGOR NOR THE PROGRAM ADMINISTRATOR AUTHORIZE ANY PERSON, ENTITY OR DEALER TO CREATE FOR THEM ANY OTHER OBLIGATION OR LIABILITY IN CONNECTION WITH THIS PRODUCT.*

*Id*. (emphasis removed).[3]

In April 2024, Plaintiff's Dodge Ram began making "knocking" or "ticking" noises in the engine compartment, and Plaintiff took her vehicle to a repair shop. In an estimate generated April 18, 2024, the repair shop concluded that "two of the deactivating lifters are worn, causing the noise described" and recommended "replacing all of the lifters" and other related hardware and gaskets. Hr'g Ex. 4. The total estimate for all parts and repairs was $3,842.26. Plaintiff checked her VSA, saw the "lifters" were covered parts, authorized the repair shop to begin the work, and filed the claim with Defendant. Defendant assigned an inspector to view the vehicle, and Plaintiff spoke with him. On May 1, 2024, a "claim adjuster" named Anthony employed by One Guard Inspections completed a vehicle inspection report ("Report"). The Report states that the failure did not exist at the time of sale, that the "data collect during the inspection is consistent with a failure of the cylinder 4 lifter," and that the "inspector recommends replacing the passenger side lifters." Hr'g Ex. 3.

On May 6, 2024, Plaintiff received an email from Defendant denying her claim. Despite the contrary conclusion in the Report, Defendant stated that the claim was "denied due to pre-existing issues." Hr'g Ex. 2. In capital letters under this statement, the denial letter states:

> DENIED DUE TO PRE-EXISTING ISSUES AND VEHICLE ENGINE HAS BEEN TORN DOWN PRIOR TO INSPECTION. PER CARFAX AND SERVICE RECORD, VEHICLE HAD CAM POSITION SENSOR ISSUES ON 6/08/23 AT 152,779 MILES AND AGAIN ON 10/03/23 AT 148,664 MILES. CUSTOMER HAS TWO PAYMENTS.

---

[3] Plaintiff did not urge the Court to find this provision unconscionable or strike it from the contract.

*Id.* The Report, which contradicted the reasons for denial, was attached to the denial email, causing Plaintiff confusion as to why her claim was denied.

The repair shop completed the repair in June 2024. Without coverage from Defendant, Plaintiff was unable to pay the $3,842.26 amount owed for the repair. It took Plaintiff approximately six more months to pay the total amount owed. Plaintiff did not receive her vehicle back from the repair shop until the total was paid. Plaintiff and her husband Gary Rader testified that they suffered distress and inconvenience due to denial of the claim because they had to share one vehicle for a significant period of time. They missed family events, missed time with grandchildren, and Gary had a more difficult time completing work duties without use of the truck.

Plaintiff stopped making monthly payments on the VSA around the time Defendant denied her claim for repair on the vehicle. In addition to the $75.00 down payment, she had made three $169.00 payments, for a total of $582.00 paid on the contract. Plaintiff lost use of the vehicle for a total of eight months and presented evidence that a comparable rental vehicle would have cost $58.64/day, for a total of $14,073.60 (240 days at $58.64/day). Hr'g Ex. 6.

Plaintiff seeks the following damages for breach of contract: (1) $3,842.26 for the cost of repair; (2) $582.00 for payments made to Defendant for coverage that was not provided; and (3) $14,073.60 for loss of use, which is an approximation based on the cost of renting a comparable truck for an eight-month period, for a total of $18,497.86.[4] Plaintiff also originally requested $1,000,000.00 damages on her bad faith claim, although Plaintiff did not offer further support for such claim in her supplemental briefing. Instead, Plaintiff now attempts to add a fraud claim, which would permit recovery of tort damages for emotional distress and other non-economic

[4] During the hearing, Plaintiff's counsel could not point to any contract provision covering rental vehicles but stated he would inform the Court of authority for providing "loss of use" damages in a supplemental brief. In the supplemental brief filed after the hearing, Plaintiff did not point the Court to such a provision.

damages caused by denial of the claim. Plaintiff seeks a total of $1,018,497.86 in contract and tort damages.

## III. Moton to Amend to Conform to Evidence

Federal Rule of Civil Procedure 15(b) provides:

> (1) *Based on an Objection at Trial.* If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence.
>
> (2) *For Issues Tried by Consent.* When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

"Rule 15 was promulgated to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982). Although variances between the pleadings and the proof were impermissible before enactment of the federal rules, such variances are now freely allowed under Rule 15. *Id.* When evidence is presented on an issue outside the pretrial order, Rule 15(b) may be invoked to effect an amendment of the pretrial order. *Id.*

The Court finds that amendment is not proper under Rule 15(b), because Plaintiff failed to plead or present sufficient evidence to support a fraud claim. While there is ample evidence to conclude Defendant breached the VSA, there is not sufficient evidence that Defendant knew it would not pay any of Plaintiff's claims when Plaintiff purchased the VSA. Plaintiff presented evidence that Defendant denied the claim, despite that its own hired inspector recommended paying the claim. Defendant reasoned that the lifter malfunctions were the result of pre-existing

conditions, despite its own inspector's counter conclusion. Plaintiff asks the Court to infer that, based on this contradiction between the inspector's report and the reasons for denial, Defendant never intended to honor the contract and therefore fraudulently induced Plaintiff to enter the contract. This is too great of an inferential leap based on the factual record. One instance of failing to pay a claim, where at least some reason was given to the insured, does not establish Defendant's fraudulent intent, at the time it entered the contract, to never pay any claim. Because amendment is not required to conform to the evidence, Plaintiff's motion to amend to add a fraud claim is denied.

**IV. Liability/Damages**

**A. Insurance Bad Faith**

Even though all facts are confessed, the record does not permit a bad faith claim. As explained in an Opinion and Order dated July 10, 2025, the VSA at issue here falls squarely within the Oklahoma Service Warranty Act ("OSWA"). ECF No. 31 at 13-14. The OSWA provides that "service warranties are not insurance in this state or otherwise regulated under the Insurance Code," *id.* § 141.2(17)(f), and that service warranties "shall not be deemed to create a special relationship between the parties which would give rise to an action in tort to recover for breach of the duty of good faith and fair dealing," *id.* § 141.24(B). Plaintiff failed to present additional case law or other developments casting this statute or the Court's prior reasoning in doubt. Although Defendant has been sanctioned in the form of a default judgment, *see* ECF No. 39, the Court still may not award damages on a non-cognizable claim. Therefore, the Court does not enter default judgment or award any damages on Plaintiff's claim for insurance bad faith.

**B. Breach of Contract**

The confessed facts demonstrate that Defendant breached the VSA when it failed to pay Plaintiff's claim, contrary to its own inspector's recommendation and findings. Under Oklahoma

law, the general measure of damages for breach of contract is the "amount which will reasonably compensate the party aggrieved for all detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Okla. Stat. tit. 23, § 21. The Oklahoma Uniform Jury Instructions (Civil) also cite to the Restatement (Second) of Contracts, which provides that contract damages "'are intended to give [an injured party] the benefit of his bargain that would award him a sum of money that will, to the extent possible, put him in as a good a position as he would have been in had the contract been performed.'" Okla. Unif. Jury Instr. (Civ.) 23.51. Ordinarily, this would extend to loss of use and other "make whole" contract damages.

The VSA, however, places limits on the damages available under Oklahoma law. As set forth above, the VSA limits liability to $7,500 or actual cash value of the vehicle, whichever is less. The VSA also prevents recovery for special, indirect, incidental, punitive, or consequential damages, including damages for loss of use of the vehicle, inconvenience, or any other loss. Based on these contract limitations, Plaintiff may recover only $3,842.26 for the cost of the repair and $582.00 for payments made to Defendant for coverage that was not provided, for a total of $4,424.26. Plaintiff cannot recover her requested $14,073.60 for loss of use or any emotional distress damages. Even in cases of default, the Court is bound by the contractual language governing the parties' agreement.

## V. Conclusion

This case has a harsh result. Defendant failed to pay the claim and did so without a clear or reasonable explanation, in light of the attached Report. Defendant caused Plaintiff inconvenience, hardship, and distress while she waited to save money to pay off the repair. Defendant then forced Plaintiff to arbitration, only to abandon the litigation and allow a default to

be taken against it. However, bad faith and fraud claims are not viable, and the VSA contains a strict damages limitation.

The Court finds:

(1) Plaintiff's Motion for Leave to Amend to Conform (ECF No. 41) is DENIED.

(2) Defendant is not liable to Plaintiff on the bad faith claim;

(3) Defendant is liable to Plaintiff in the total amount of $4,424.26 on the breach of contract claim.

(4) The Court will enter a separate judgment.

**SO ORDERED** this 20th day of October, 2026.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**